UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BARBARA V. RAMPHAL,

       Plaintiff,

v.                                          Case No. 6:18-cv-116-ORL-28SPF

ANDREW M. SAUL,[1]
Acting Commissioner of the
Social Security Administration,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of her cessation of social security disability benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff initially filed an application for a period of disability, DIB, and SSI on November 29, 2000 (Tr. 82). The ALJ issued a favorable decision finding Plaintiff became disabled on July 14, 2000 (Tr. 74–82). On October 20, 2014, Plaintiff was informed that her disability had ceased due to health improvements (Tr. 85–90). Plaintiff filed a request

---

[1] Andrew M. Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

1

for reconsideration, and a disability hearing officer issued a decision ceasing Plaintiff's disability benefits (Tr. 91, 98–105). Plaintiff then requested an administrative hearing (Tr. 112). The ALJ held a hearing at which Plaintiff appeared and testified (Tr. 40–69). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 13-39). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review.

## **FACTUAL BACKGROUND AND THE ALJ'S DECISION**

Plaintiff, who was born in 1973, claimed disability beginning in July 14, 2000 (Tr. 78, 197). Plaintiff obtained an Associate Degree (Tr. 24). Plaintiff's past relevant work experience included work as a bank teller, a customer service representative, and a waitress (Tr. 18). Plaintiff alleged disability arising from bilateral shoulder disorder, diabetes mellitus, diabetic neuropathy, diabetic retinopathy, major depression disorder, and anxiety (Tr. 24).

In evaluating Plaintiff's cessation of benefits claim, the ALJ concluded that as of October 1, 2014, Plaintiff had severe impairments of anxiety, depression, diabetes mellitus, diabetic neuropathy, diabetic retinopathy, and bilateral shoulder disorder (Tr. 18). However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the regulations as of October 1, 2014 (Tr. 20). Further, the ALJ found that medical improvement occurred as of October 1, 2014 (Tr. 21). Then, the ALJ found that as of

October 1, 2014, the impairments present at the time of the Comparison Point Date ("CPD")[2]—December 14, 2004—had decreased in medical severity to the point where Plaintiff had the residual functional capacity ("RFC") to perform at less than the full range of light work (Tr. 23). Thus, the ALJ found Plaintiff's medical improvement was related to the ability to work, because it resulted in an increase in her RFC (Tr. 23). The ALJ then found that as of October 1, 2014, Plaintiff continued to have a severe impairment or combination of impairments (Tr. 23). Based on the impairments present as of October 1, 2014, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations (Tr. 24). Specifically, she could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; could frequently reach with her bilateral upper extremities; and needed to avoid concentrated exposure to workplace hazards. Further, she could not perform jobs requiring more that occasional peripheral vision. She could perform simple, routine, and repetitive tasks with occasional changes in a routine work setting, and she could occasionally interact with coworkers and the general public (Tr. 24).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her

---

[2] The ALJ determined that the Comparison Point Decisions was the most recent favorable medical decision findings that the claimant continued to be disabled dated December 14, 2004 (Tr. 17).

3

symptoms were not entirely consistent with the medical history, the reports of treating and examining physicians and psychiatrists, the degree of medical treatment required, and Plaintiff's own description of her activities and lifestyle (Tr. 25).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform past relevant work (Tr. 31). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a labeler, merchandise marker, or electrode cleaner (Tr. 32). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that Plaintiff's disability ended as of that date (Tr. 33).

## **LEGAL STANDARD**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In order to regularize the adjudicative process, the Social Security Administration promulgated the detailed regulations currently in effect. These regulations establish a sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §

416.920. The regulations also establish a sequential evaluation process to determine whether a claimant's disability continues. 20 C.F.R. § 416.994(b)(5). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) if the claimant does not have such impairment or combination of impairments, whether there has been medical improvement;[3] (3) if the claimant experienced medical improvement, whether such medical improvement is related to the claimant's ability to perform work, *i.e.*, whether or not there has been an increase in the RFC based on the impairment(s) that was present at the time of the most recent favorable medical determination;[4] (4) whether an exception applies to a finding of no medical improvement or to a finding that medical improvement was not related to the claimant's ability to work; (5) whether the claimant has a severe impairment; (6) if a severe impairment exists, whether the claimant can perform substantial gainful activity such that the claimant can perform his or her past relevant work; (7) if unable to perform past relevant work, whether the claimant can perform other work 20 C.F.R. § 416.994(b)(5)(i)-(vii).

---

[3] Medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). If medical improvement occurred, as demonstrated by a decrease in medical severity, the analysis proceeds to step three, while, if no decrease in medical severity occurs, there is no medical improvement. 20 C.F.R. § 416.994(b)(5)(ii).

[4] If medical improvement is not related to the ability to work, the analysis proceeds to step four, but, if medical improvement is related to the ability to work, the analysis proceeds to step five. 20 C.F.R. § 416.994(b)(5)(iii).

5

A determination by the Commissioner must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam).

## **ANALYSIS**

Plaintiff asserts two general arguments on appeal: (1) the ALJ failed to properly evaluate Plaintiff's RFC, and (2) the ALJ failed to pose a complete hypothetical to the VE.

For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.[5]

I. **Plaintiff's RFC**

Plaintiff's first contention regarding her RFC can be divided into three more particularized issues: (1) whether the ALJ erred by failing to consider and weigh the treatment notes of Plaintiff's treating physician, Dr. Mahendra Shah ("Dr. Shah"); (2) whether the ALJ erred by failing to recontact Dr. Shah to clarify the contents of Dr. Shah's alleged "illegible" treatment notes; and (3) whether the ALJ properly included all the limitations outlined in Dr. Anne-Marie Bercik's ("Dr. Bercik") opinion.

A. **Whether the ALJ erred by failing to consider and weigh Dr. Shah's treatment notes**

Plaintiff asserts that Dr. Shah's treatment notes are medical opinions and that the ALJ erred by failing to assign them weight. The Commissioner counters that Dr. Shah's treatment notes are not medical opinions, and that even if they are, any error in failing to weigh such opinions is harmless. The Court agrees with the Commissioner.

An ALJ is required to state with particularity the weight given to each medical opinion and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical

---

[5] Plaintiff only challenges the ALJ's RFC finding as of October 1, 2014. Therefore, any claimed of error related to the ALJ's evaluation of Plaintiff's cessation of benefits is waived.

7

or mental restriction." 20 C.F.R. § 404.1527.[6] Treatment notes may be considered a medical opinion if the notes contained "a description of [Plaintiff's] symptoms, a diagnosis, and a judgment about the severity of [her] impairments." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011).

A review of the record shows that Dr. Shah first treated Plaintiff on May 26, 2015. At her first consultation, Dr. Shah diagnosed Plaintiff with major depression and attention-deficit hyperactive disorder (Tr. 537). Subsequently, Dr. Shah treated Plaintiff on at least six other occasions—June 25, 2015, August 25, 2015, October 25, 2015, March 29, 2016, May 5, 2016, and June 15, 201. The records of these visits are found in Dr. Shah's progress notes (Tr. 534–37; 561–62). A review of Dr. Shah's progress notes shows different reports of depression, distractibility, and poor functioning by Plaintiff, as well as changes of medication in order to control Plaintiff's mental status. The progress notes also show that in general Plaintiff's mental condition was "medically stable" and controlled by medication (Tr. 561–62). Dr. Shah's treatment notes, however, fail to provide the ALJ or the Court with any judgment about Plaintiff's limitations as result of her mental impairments. Without such information, the Court is unable to treat Dr. Shah's treatment notes as medical opinions, rather than simple summaries of Plaintiff's medical condition. Consequently, the Court finds no error in the ALJ's failure to weigh Dr. Shah's treatment notes.

Further, even if Dr. Shah's treatment notes constitute valid medical opinions, the ALJ's failure to explicitly articulate the weight afforded to such opinions is harmless error.

---

[6] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017.

8

A failure to discuss the weight given to a treating physician's opinion is harmless if the ALJ discussed the opinion (or in this case treatment notes) in his decision, and the ALJ's disability determination is consistent with the opinion. *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to discuss weight given to a physician's opinion constituted harmless error when the opinion did not contradict the ALJ's finding and was substantially similar to that of another doctor whose opinion was given substantial weight); *Wright v. Barnhart*, 153 F. App'x 678, 684 (finding harmless error where the ALJ failed to explicitly state what weight he afforded to a number of physicians' medical opinions where none of those opinions directly contradicted the ALJ's findings).

In reaching her disability determination, the ALJ expressly considered Dr. Shah's treatment notes from May 2015 and evaluated Dr. Shah's progress notes in conjunction with the opinions of numerous physicians and psychologists, including Dr. Veda Vyas and Dr. Balinder Chahal (Tr. 29–30). Based on these notes and opinions, the ALJ concluded that the intensity, persistence, and limiting effects of Plaintiff's depression and anxiety were not as severe as Plaintiff alleged and did not support a disability that would preclude light work activity (Tr. 29, 561–65). Further, the ALJ noted that Plaintiff responded very well to psychiatric treatment and mental health counseling from Dr. Shah, and that Dr. Shah continued to modify, adjust, or discontinue medications to control Plaintiff's mental health symptoms (Tr. 30). The ALJ found Dr. Shah's notes directly probative of Plaintiff's medical and psychosocial improvement from the CPD. Given that the ALJ considered Dr. Shah's opinion and the opinion is in line with the ALJ's disability

9

findings, any error by the ALJ in failing to assign weight to Dr. Shah's treatment notes is harmless.

### B. Whether the ALJ erred by failing to recontact Dr. Shah to clarify the contents of Dr. Shah's alleged "illegible" treatment notes

The ALJ has a basic obligation to develop a "full and fair" record, even where the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). An ALJ should recontact a claimant's treating physician if the evidence in the record is "otherwise inadequate" to determine whether the claimant is disabled. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010); *see* 20 C.F.R. §§ 404.1512(e), 416.912(e). In evaluating the necessity for a remand for failure to develop the record, the court is guided by whether the record reveals evidentiary gaps resulting in "clear prejudice" to the claimant. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). A court may find clear prejudice where (1) an evidentiary gap exists "that the claimant contends supports her allegations of disability," or (2) the claimant can show that the ALJ's decision would have changed in light of additional information. *See Robinson*, 365 F. App'x at 999 (ALJ's failure to recontact treating and consultative doctors did not rise to the level of reversible error because the record contained sufficient evidence for the ALJ to determine claimant's RFC).

Plaintiff contends that the ALJ erred by failing to recontact Dr. Shah to clarify the contents of "illegible" treatment notes, citing the Eight Circuit's holding in *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990) and several other circuit court decisions (Doc. 27 at 21–22). However, these decisions make clear that the illegibility of important

evidentiary material may warrant remand for supplementation or clarification only when the medical evidence was otherwise inadequate for the ALJ's RFC determination. *See Bishop*, 900 F.2d at 1262; *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). Here, the ALJ included Dr. Shah's treatment notes in her RFC determination and considered and weighed the opinions of eight additional medical professionals (Tr. 24–31). The record was thus wholly sufficient for the ALJ to evaluate Plaintiff's functional ability and does not show the kind of evidentiary gaps that would warrant remand on the basis of prejudice.

### C. Whether the ALJ properly included all the limitations outlined by Dr. Berick, the State agency physician

In her RFC assessment, Dr. Berick concluded that Plaintiff was "moderately limited" in: (1) her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) her ability to interact appropriately with the general public; and (3) her ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 464–65). Dr. Berick further provided that Plaintiff would have moderate difficulties working with others, "may need to work in an environment with minimal social interactions," and "would benefit from working with a nonconfrontational supervisor" (Tr. 466). Plaintiff contends that the ALJ erred by failing to include all the above-mentioned limitations into the RFC finding and failing to provide a reasoned explanation for doing so.

11

When rejecting portions of an opinion, the ALJ is required to provide a reasoned explanation as to why he or she chose not to include a particular limitation in the RFC determination. *See Winschel*, 631 F.3d at 1178–79; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) ("[The] ALJ cannot reject portions of a medical opinion without providing an explanation for such decision."). Dr. Berick's first statements regarding Plaintiff's "moderate limitations" were made in the summary conclusions section of the RFC form (Tr. 464). In this Circuit, the ALJ is not required to include the "moderately limited" notations from the summary conclusions section in a claimant's RFC. *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012); *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49-50 (11th Cir. 2012). According to the Social Security Administration's Programs Operations Manual System (POMS), checking the box "Moderately Limited" means only that the claimant's capacity is impaired – it does not indicate the degree and extent of the limitation. POMS DI § 24510.063(B)(2). Further, after checking the boxes as an "aid," a physician or consultant is then required to detail his or her actual RFC assessment. *Id.* § 24510.060(B)(4). Since these notations did not form part of Dr. Berick's opined limitations, the ALJ was not required to provide a reason for not including them in her RFC assessment.

With respect to Dr. Berick's statements that Plaintiff would have moderate difficulties working with others and "may need to work in an environment with minimal social interactions," the ALJ sufficiently accounted for these statements in the RFC by including a limitation that Plaintiff "could only occasionally interact with coworkers and the general public" (Tr. 24). Lastly, Dr. Berick's statement that Plaintiff "would benefit

from working with a nonconfrontational supervisor" is consistent with the ALJ's ultimate finding. By opining that Plaintiff would "benefit" from a certain type of supervisor, Dr. Berick simply described Plaintiff's ideal work conditions. Dr. Berick did not opine, however, that Plaintiff was incapable of working under normal supervision. Thus, the ALJ did not err by leaving out that limitation. *See* 20 C.F.R. § 404.1545(a) (stating that a plaintiff's RFC "is the most [she] can still do despite [her] limitations."); *see also Whitten v. Soc. Sec. Administration, Commr.*, No. 18-13460, 2019 WL 3006462, at *4 (11th Cir. July 10, 2019) (finding that an State agency physician's opinion that a plaintiff "would function 'best' in a well-spaced work setting" was not an opinion that the plaintiff required a well-spaced work setting to function at all, and finding that the ALJ did not err in failing to include that specific limitation on the plaintiff's RFC).

## II.  The VE's Opinion

At the close of the evaluation process, the ALJ is required to determine whether there are "other jobs" in the national economy the claimant is able to perform. *Wilson*, 284 F.3d at 1227. To make this determination, the ALJ may either (1) apply the Medical Vocational Guidelines, or (2) obtain the testimony of a VE as to whether an individual with the claimant's limitations would be able to secure employment in the national economy. *Winschel*, 631 F.3d at 1180. In order for a VE's testimony to constitute "substantial evidence," the hypothetical question posed by the ALJ must include all of the Plaintiff's impairments. *Wilson*, 284 F.3d at 1227.

Plaintiff contends that the hypothetical posed to the VE was inadequate because the ALJ did not properly weigh Dr. Shah's opinions and did not include all the limitations

13

outlined by the state agency physician.[7] As discussed above, the ALJ properly considered Dr. Shah's treatment notes, but Dr. Shah failed to state any specific medical limitations to be incorporated into Plaintiff's RFC. Further, the ALJ included the limitations outlined in Dr. Berick's opinion to the extent required in her RFC determination. Therefore, Plaintiff argument is unavailing.

Plaintiff also argues that the VE hypothetical was inadequate because the ALJ failed to include her conclusions regarding Plaintiff's moderate limitations in social functioning, concentration, persistence, and pace (Tr. 20–21). Plaintiff's argument is equally unavailing. In the Eleventh Circuit, an ALJ may implicitly account for a claimant's moderate limitations in maintaining concentration, persistence, or pace in the hypothetical. *Winschel*, 631 F.3d at 1180–81. Specifically, where the evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite any limitations in concentration, persistence, and pace, a hypothetical limiting Plaintiff to perform only unskilled work or simple tasks can sufficiently account for such limitations. *Id.*; *see also Washington v. Soc. Sec. Admin., Com'r,* 503 F. App'x. 881, 883 (11th Cir. 2013) (holding that the ALJ implicitly accounted for limitations in concentration, persistence, and pace in the hypothetical by including limitations to perform only simple, repetitive tasks with up to three-step demands, and occasional changes in the work setting, judgment, or decision making).

---

[7] The ALJ posed various hypotheticals to the VE limiting Plaintiff to perform "simple, routine, repetitive tasks with occasional changes in a routine work setting" and "occasionally interact with coworkers and the general public" (Tr. 64).

Here, the record demonstrates that despite Plaintiff's moderate limitations in concentration, persistence, or pace, she could engage in simple, repetitive, and routine tasks or unskilled work. Particularly, Plaintiff was able to attend classes during the relevant period and obtained an associate's degree in 2015 (Tr. 44). Plaintiff further stated that she spent "most of her day working with her computer, feeding her dogs, going to school, and doing homework" (Tr. 447), and Dr. Bercik opined that Plaintiff was able to understand, retain, and carry out both simple and some complex instructions (Tr. 466). Given that the ALJ's hypothetical restricted Plaintiff to perform "simple, routine, repetitive tasks with occasional changes in a routine work setting" and "occasional interaction with coworkers and the general public," and that the record shows Plaintiff was capable of engaging in simple, repetitive, and routine tasks, the VE's testimony constituted "substantial evidence" and the ALJ's reliance on such testimony was proper. *See Wilson*, 284 F.3d at 1227.

## **CONCLUSION**

Based on the above findings, it is hereby RECOMMENDED:

1. The decision of the Commissioner be affirmed.
2. The Clerk be directed to enter final judgment in favor of the Commissioner and to close the case.

REPORTED in Tampa, Florida, on August 7, 2019.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

cc: Hon. John Antoon II.
      Counsel of Record